UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| MARK A. McCLARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-1394 |
| | ) | |
| ROBERT HUSTON, NURSE RENEE | ) | |
| ALEXANDER, NURSE JESSICA BONNETTE, | ) | |
| OFFICER MICHELE MORETTO, OFFICER | ) | |
| DAWN HOSTETLER, DR. VIPIN SHAH, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Plaintiff, proceeding *pro se*, was housed at Tazewell County Justice Center at all times relevant to this cause of action. He pursues a conditions of confinement claim against Defendants Huston, Hostetler, and Moretto. Specifically, he claims that these Defendants subjected him to unconstitutional conditions of confinement based upon his arthritic condition. Now before this Court is Defendants Huston's, Hostetler's, and Moretto's Motion for Summary Judgment [d/e 51], which will be granted for the reasons below.[1]

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(1)(B). If the movant clears this

---

[1] In its 8/7/2013 summary judgment Opinion, the Court determined that the statute of limitations bars Plaintiff's conditions of confinement claim against Defendants Hostetler and Moretto to the extent it is based upon his allegations that the placement decisions, themselves, made by these Defendants were unconstitutional. The Court will therefore limit its analysis in this Opinion accordingly.

1

hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.*; *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

## FACTS[2]

From March 21, 2008 to October 2008, Plaintiff was housed at the Tazewell County Jail (Jail). (Dfts' MSJ, UMF #1, 2). He was then transferred to the custody of the Alton Mental Health Center from October 2008 to March 9, 2009. (Dfts' MSJ, UMF #2, 3). On March 9, 2009, Plaintiff was transferred back to the Tazewell County Jail where he remained until released from the Jail's custody on November 5, 2009. (Dfts' MSJ, UMF #3, 4). Defendant Huston is the Sheriff of Tazewell County, Illinois, and serves as the warden for the Tazewell County Jail. (Dfts' MSJ, Huston Aff. ¶¶ 2-3). Defendant Hostetler is a corrections officer at the Tazewell County Jail and during the times Plaintiff was detained at the Jail, she served as a classification officer. (Dfts' MSJ, Hostetler Aff. ¶¶ 1, 3). Defendant Moretto is a corrections officer at the Jail and during the times Plaintiff was detained at the Jail, she served as a classification officer. (Dfts' MSJ, Moretto Aff. ¶¶ 1, 3). As classification officers, Hostetler and

---

[2] Plaintiff did not file a response to Defendants' Motion for Summary Judgment though he was given the opportunity to do so. Therefore, the Court will take Defendants' Undisputed Material Facts as true.

Moretto were required to evaluate detainees upon arrival and on a regular and continuing basis during detention for appropriate housing and security at the Jail. (Dfts' MSJ, Hostetler Aff. ¶ 4; Moretto Aff. ¶ 4).

Plaintiff never met Defendant Huston. (Dfts' MSJ, UMF #26). Defendant Huston never took part in determining Plaintiff's housing assignments, never evaluated Plaintiff for medical treatment, and never personally received a request regarding housing from Plaintiff. (Dfts' MSJ, UMF #28, 29, 31).

Plaintiff was treated by doctors and nurses while he was detained at the Jail. (Dfts' MSJ, UMF #23). No medical professional recommended that Plaintiff be allowed to cover up with blankets at any time during the day, and no doctor told Plaintiff that the temperature of his housing was aggravating his arthritis. (Dfts' MSJ, UMF #8, 17). No doctor ever recommended a change in Plaintiff's housing assignment while he was at the Jail, though Plaintiff did have an opportunity to discuss his housing conditions with doctors and no doctors recommended special accommodations for him or a change in accommodations due to a medical need. (Dfts' MSJ, UMF #16, 24). Neither Defendant Hostetler nor Defendant Moretto controlled the temperature of the Jail. (Dfts' MSJ, UMF #18). Any requests for medical attention Plaintiff may have made were communicated by Hostetler and Moretto to medical staff. (Dfts' MSJ, UMF #40).

Housing assignments at the Jail are made based upon objective considerations for purposes of ensuring the safety and security of inmates and jail staff. (Dfts' MSJ, UMF #41). Housing at the Jail is divided into various pods which are distinguished by different security levels and supervision. (Dfts' MSJ, UMF #43). When Plaintiff first arrived at the Jail in 2008, he was placed in the Special Housing Unit (SHU). (Dfts' MSJ, UMF #50). Between April and August 2008 at the Jail, he was placed in the SHU, D Pod (high security housing), or a medical

cell. (Dfts' MSJ, UMF #52). While at the Jail in 2008, Plaintiff was talking to himself and jail staff believed he was trying to harm himself. (Dfts' MSJ, UMF #9). When Plaintiff returned to the Jail in March 2009, he was placed in the SHU given his history of mental health concerns and given that his records indicated that he was a suicide risk. (Dfts' MSJ, UMF #54). He was briefly assigned to a medical cell between March 10th and 13th, 2009 because he returned from the Alton Mental Health facility with a number of prescribed medications and because he said he did not feel well. (Dfts' MSJ, UMF #56). On March 13, 2009, Plaintiff returned to the SHU, and then was temporarily assigned to the E Pod (housing for detainees anticipated to transfer to lower security housing). (Dfts' MSJ, UMF #57-58). Finally, on March 18, 2009, Plaintiff was re-evaluated and assigned housing in the minimum security pod in a lower bunk where he remained until he left the Jail. (Dfts' MSJ, UMF #59).

## ANALYSIS

**I.  Defendant Huston**

Defendants argue that summary judgment must be granted in Defendant Huston's favor because Plaintiff cannot show that Huston caused or participated in the alleged constitutional violations. "Section 1983 creates a cause of action based upon personal liability and predicated upon fault." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). Thus, there is no supervisor liability in Section 1983 actions and an individual cannot be held liable under Section 1983 unless the individual caused or participated in the alleged constitutional violation. *Id*. (citing cases); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Plaintiff testified during his deposition in this matter that he named Defendant Huston in his Complaint for Huston's failure to respond to the letters Plaintiff wrote to Huston in which Plaintiff asked to be allowed to get under his covers during the daytime. (Dfts' MSJ, Plf's Dep.

pp. 61-62, 75-76). Even if Plaintiff did, in fact, write letters to Defendant Huston and believes Huston should have intervened, that is not enough to establish liability under Section 1983. *See Hanna v. Lane*, 610 F. Supp. 32, 36 (N.D. Ill. 1985) (an administrator did not subject himself to §1983 liability merely by failing to respond to an inmate's letter); *Glasco v. Prulhiere*, 2009 WL 54298, at *1 (S.D. Ind. Jan. 8, 2009) ("Even if [the plaintiff] wrote letters to these defendants, this fact alone is insufficient to support recovery from supervisory dependents."); *Diaz v. McBride*, 1994 WL 750707, at *4 (N.D. Ind. Nov. 30, 2004) (holding that a plaintiff could not establish personal involvement, and subject a prison official to liability under section 1983, just by sending the official various grievances or letters complaining about the actions or conduct of subordinates.); *Reed v. Richards*, 1992 WL 396863, * (N.D. Ind. Dec 31, 1992) (inmate could not subject supervisory prison official to liability by sending the official various letters and grievances in which inmate complained about the actions or conduct of subordinates).

Furthermore, the undisputed evidence shows that Plaintiff never met Defendant Huston, Defendant Huston never took part in determining Plaintiff's housing assignments, never evaluated Plaintiff for medical treatment, and never personally received a request regarding housing from Plaintiff. In other words, Plaintiff cannot show that Huston caused or participated in the constitutional violations Plaintiff alleges. Even after viewing the evidence in the light most favorable to Plaintiff, there is no genuine dispute of material fact in regard to Defendant Huston and therefore Huston is entitled to summary judgment.

## II.    Defendants Hostetler and Moretto

Defendants similarly argue as to Defendants Hostetler and Moretto that Plaintiff cannot show that they caused or participated in the alleged constitutional violation. They further argue that Plaintiff cannot show deliberate indifference where he was under the care of medical staff,

and no evidence exists that Plaintiff's housing was unsafe, harmful, aggravating, or that housing conditions should have been altered.

Though Plaintiff was a pretrial detainee at the times identified in his First and Second Amended Complaints, his conditions of confinement claim is examined under the Fourteenth Amendment rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979); *Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002) ("The protections for pre-trial detainees are 'at least as great as the Eighth Amendment protections available to a convicted prisoner' . . . ." (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983))). Yet the Seventh Circuit Court of Appeals has explained that courts still look to Eighth Amendment case law given that pretrial detainees' protections are "at least as broad as those that the Eighth Amendment affords to convicted prisoners." *Rice ex rel. Rice v. Correctional Medical Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) (citing *City of Revere*, 463 U.S. at 244).

Where a plaintiff alleges that his conditions of confinement were unconstitutional, two considerations are involved: 1) whether the adverse conditions complained of were "sufficiently serious;" and 2) whether prison officials were deliberately indifferent to the adverse conditions. *Rice ex rel. Rice*, 675 F.3d at 664-65. Deliberate indifference, in turn, requires a plaintiff to show that the officials were subjectively aware of the condition complained of, but consciously disregarded it. *Id.* at 665 (citing cases).

Here, Defendants contend that Plaintiff's conditions were not sufficiently serious enough where there is no evidence that his housing conditions impacted his medical condition. They also argue that no deliberate indifference can be shown because any condition imposed upon Plaintiff, such as a particular housing assignment or the prohibition against covering up with

6

blankets during the day, was done to further legitimate penological interests and was not done as punishment. Prison inmates retain certain constitutional rights, but those rights may be subject to restrictions and limitations. *Bell*, 441 U.S. at 545 (citing cases). "The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." *Id*. at 546 (citing cases). Thus, a prison regulation that impinges on a prisoner's constitutional rights is valid if reasonably related to legitimate penological interests. *Turner v. Safely*, 482 U.S. 78, 89 (1987).

While the Court finds it somewhat problematic that Defendants did not provide any affidavits specifically addressing the reasons for why there is a prohibition against detainees getting under their blankets during the day, Plaintiff did admit during his deposition that he agreed that the Jail has rules which are in place to maintain security at the facility. (Dfts' MSJ, Plf's Dep. p. 64). Defendants did address the reasons for why detainees are placed within certain locations at the Jail, and after considering the *Turner* factors, the Court finds that the Jail's housing assignments are reasonably related to legitimate penological interests. Specifically as to Plaintiff, the undisputed evidence shows that Defendants placed Plaintiff in various locations in the Jail during his time there for legitimate penological reasons balanced with legitimate consideration of his mental state.

Moreover, Plaintiff has not come forth with any evidence that Defendants Hostetler or Moretto were subjectively aware that their placement decisions were causing Plaintiff to suffer given his RA, yet consciously disregarded Plaintiff's suffering. Indeed, as Defendants point out, a non-medical prison official can rely upon the instructions of medical staff. A prison official does not disregard an inmate's complaint if he knows that the medical staff was monitoring and addressing the problem. *See Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006).

7

Nonetheless, non-medical officials can "be chargeable with the Eighth Amendment scienter requirement of deliberate indifference" where they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Greeno v. Daley*, 414 F.3d at 655-56 (concluding that the defendant "corrections complaint appeals examiner['s]" failure to take further action was not deliberate indifference where that defendant reviewed the inmate's complaint and verified with medical officials that the inmate was receiving treatment); *Johnson*, 433 F.3d at 1012 (providing that non-medical defendant did not have a sufficiently culpable state of mind where he investigated the inmate's situation, made sure that medical staff were monitoring and addressing the problem, and thus reasonable deferred to the medical professionals' opinions). Here, there is no evidence that a doctor ever recommended a change in Plaintiff's housing assignment at the Jail, or that any doctors recommended special accommodations for him or a change in accommodations due to a medical need. Notably, Plaintiff testified during his deposition that he did request special accommodations, but that he was not aware that any doctor made a recommendation regarding Plaintiff's housing that the Jail did not follow, and that his arthritis conditions was being addressed by doctors at the Jail. (Dfts' MSJ, Plf's Dep. p. 78). Also, Defendants Hostetler and Moretto say that they communicated to medical professional staff at the Jail any and all requests for medical and dental care expressed to them by Plaintiff during his time at the Jail. (Dfts' MSJ, Hostetler Aff. ¶ 29; Moretto Aff. ¶ 38). For the reasons set forth above, Defendants Hostetler and Moretto are entitled to summary judgment.

**IT IS THEREFORE ORDERED:**

**Defendants Huston's, Hostetler's, and Moretto's Motion for Summary Judgment is GRANTED [d/e 51].**

ENTERED this 12th day of August, 2013.

                                          s/ Joe B. McDade
                              _____
                                  JOE BILLY McDADE
                             UNITED STATES DISTRICT JUDGE