## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| MARK A. McCLARY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 11-1394 |
| | ) |
| ROBERT HUSTON, NURSE RENEE | ) |
| ALEXANDER, NURSE JESSICA BONNETTE, | ) |
| OFFICER MICHELE MORETTO, OFFICER | ) |
| DAWN HOSTETLER, DR. VIPIN SHAH, | ) |
| | ) |
| Defendants. | ) |

### OPINION

Plaintiff, proceeding *pro se*, was housed at Tazewell County Justice Center at all times relevant to this cause of action. He pursues a claim of deliberate indifference to his serious medical condition against Defendants Alexander, Bonnette, and Dr. Shah. Now before this Court is Defendants Alexander's, Bonnette's, and Shah's Motion for Summary Judgment [d/e 49], which will be granted for the reasons below.

At the outset, the Court notes that it previously determined that only Plaintiff's claims of deliberate indifference to his serious medical condition of Rheumatoid Arthritis arising between March 9, 2009 and November 5, 2009 remain in this case. *See* October 26, 2012 Opinion. Thus, the Court will limit its analysis here on summary judgment accordingly.

### SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible

1

evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(1)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.*; *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

## FACTS

Plaintiff was originally incarcerated at the Tazewell County Jail (Jail) from March 21, 2008 to October 15, 2008. (Dfts' MSJ, UMF #5). While there, Plaintiff was diagnosed as being bipolar. (Dfts' MSJ, UMF #8). From the Jail he went to the Alton Mental Health Facility (Alton) and stayed at Alton from October 2008 to March 2009. (Dfts' MSJ, UMF #6). While at Alton, Plaintiff was diagnosed with depression and bipolar disorder. (Dfts' MSJ, UMF #7). Plaintiff then returned to the Jail on March 9, 2009 and remained there until November 5, 2009. (Dfts' MSJ, UMF #10). He was on suicide watch on occasion while at the Jail. (Dfts' MSJ, UMF #50). Plaintiff says his Rheumatoid Arthritis (RA) causes sporadic symptoms. (Dfts' MSJ, UMF #46). Plaintiff also has a history of multiple medical and psychiatric conditions. (Dfts' MSJ, UMF #63).

When Plaintiff returned to the Jail on March 9, 2009, he had various medications with him that he was receiving while at Alton. (Dfts' MSJ, UMF #11). He was given those medications upon his return to the Jail for 2-3 weeks, but then the medications were terminated. (Dfts' MSJ, UMF #12). After his medications were discontinued at the Jail, he did receive some medications for depression. (Dfts' MSJ, UMF #19). On March 10, 2009, Plaintiff complained of chest pain and the on call doctor at the Jail that day, Dr. Steven Cullinan, prescribed Aspirin and antacids and then Plaintiff was closely monitored until seen by Defendant Shah. (Dfts' MSJ, UMF #65).

Defendant Dr. Shah is a physician employed by Health Professionals, Ltd. (HPL), a third-party medical vendor for the Jail, and has seen patients on a weekly basis at the Jail since 2008. (Dfts' MSJ, UMF #57, 58). Defendant Shah saw Plaintiff as a patient on two separate dates – March 11, 2009 and March 29, 2009 – and Defendant Shah reviewed Plaintiff's medications on March 18, 2009. (Dfts' MSJ, UMF #60). On March 11, 2009, Defendant Shah saw Plaintiff, the latter at the time concerned about chest pain and psychiatric issues he was feeling. (Dfts' MSJ, UMF #66). Defendant Shah examined Plaintiff who did not complain of pain at the time, and Dr. Shah diagnosed Plaintiff with a questionable anxiety attack and suggested that Plaintiff be seen by the mental health professionals at the Jail. (Dfts' MSJ, UMF #66). Defendant Shah, as physician, decides whether or not a particular medication is medically necessary. (Dfts' MSJ, UMF #59). Upon his review of Plaintiff's medications on March 18, 2009, Defendant Shah considered Plaintiff's lack of subjective complaints other than chest pain, Plaintiff's history of multiple psychiatric conditions, Plaintiff's mental health concerns at that time, the medical side effects of the medications being reviewed, the need to stop medication until Plaintiff's

3

psychiatric and cardiac problems could become stable, and other issues and decided to stop a number of the medications. (Dfts' MSJ, UMF #67).

Based upon his considerations, Defendant Shah discontinued Plaintiff's Enbrel (used to treat RA), Flexeril (typically used for acute muscle distress), Tramodol (considered a narcotic in Illinois and typically only used for a short duration), Omeprazole (for stomach pain), and Zolpiden (sleeping pill typically only provided in special cases). (Dfts' MSJ, UMF #68-72). Certain of those medications were discontinued for various other reasons. (Dfts' MSJ, UMF #68-72). Defendant Shah examined Plaintiff on March 29, 2009 when Plaintiff complained of pain in his feet, back, and hands. (Dfts' MSJ, UMF #73). Defendant Shah saw no deformity, swelling, or restriction of movement, Plaintiff's movement was normal and he was not in acute distress. (Dfts' MSJ, UMF #73). Defendant Shah diagnosed Plaintiff with pain from chronic arthritis and Dr. Shah prescribed Naprosyn twice a day as needed and a multi-vitamin. (Dfts' MSJ, UMF #73).

Defendant Nurse Bonnette is a licensed practical nurse who worked for HPL as a nurse at the Jail while Plaintiff was incarcerated there. (Dfts' MSJ, UMF #80). Her duties at the Jail included responsibility for the records concerning medical treatment for the inmates there. (Dfts' MSJ, UMF #81). Defendant Nurse Alexander is a registered nurse who worked for HPL at the Jail. (Dfts' MSJ, UMF #88-90). As a registered nurse, Defendant Alexander is able to make nursing assessments, but cannot make an official diagnosis and is not licensed to prescribe medications to patients. (Dfts' MSJ, UMF #91). Defendant Alexander follows physicians' orders as given to her with respect to the patient. (Dfts' MSJ, UMF #98). Defendant Alexander documented several entries in Plaintiff's medical progress notes. (Dfts' MSJ, UMF #92). On March 9, 2009, Defendant Alexander received a call from Alton regarding Plaintiff, specifically

that if Plaintiff returned to the Jail it was recommended that he be placed on suicide watch because he was said to be upset with having to stand trial. (Dfts' MSJ, UMF #93). On March 18, 2009, Defendant Alexander reviewed Plaintiff's medications with Defendant Shah when Shah thereafter discontinued the Flexeril, Tramodol, Enbrel, Omeprazole, and Zolpiden. (Dfts' MSJ, UMF #96).

## ANALYSIS

Defendants first argue that this Court lacks jurisdiction to hear the claims filed by Plaintiff against them because they are not state actors. Specifically, Defendants argue that public policy supports their argument that this Court extend the Supreme Court's acceptance in *Minneci v. Pollard*, 132 S.Ct. 617 (2012), that private corporations which employ private employees are not government actors whether state or federal.

The Court is not convinced that *Minneci* should be extended to this case. Other Courts that have considered the question have determined that *Minneci*, which involved a *Bivens* action, has no bearing on Section 1983 cases. *See Winchester v. Marketti*, 2012 WL 2076375, at *3 (N.D. Ill. June 8, 2012) (citing to *West v. Atkins*, 487 U.S. 42 (1988), in rejecting the argument to extend *Minneci* to Section 1983 actions against private employees working in state prisons and stating that "if the Supreme Court somehow intended a case about whether to recognize a new *Bivens* action to overturn a long line of established law on who may be a § 1983 defendant, as Defendants argue, it would need to say so explicitly (and provide considerable explanation)."); *Seiber v. Lacey*, 2013 WL 4046313, at *5 (E.D. Tenn. Aug. 8, 2013) (discussing and agreeing with cases in which it was determined that *Minneci* would not be extended to actions brought under Section 1983 by prisoners housed in state-run facilities); *Centaur v. Prisoner Transp. Services of America*, 2012 WL 6803978, at *4 n. 4 (N.D. Ga. Nov. 6, 2012) ("As this is an action

under § 1983 that does not involve federal officials or prisons, *Minneci* arguably does not apply."). The Court agrees with the reasoning set forth in the other cases that have addressed the question and thus rejects Defendants' argument here to extend *Minneci* to the facts of this case.

Defendants next argue that that Plaintiff cannot establish that Defendants were deliberately indifferent to his serious medical condition, even assuming that his arthritis is a serious medical condition, because Plaintiff himself admitted that different doctors had different ways of treating his arthritis, he cannot establish that Defendants intended to harm him, and he ultimately received adequate medical care.

Plaintiff counters that Defendants would have the Court believe that the professionals at Alton who used a particular treatment for Plaintiff's RA and the four other doctors who prescribed Enbrel for Plaintiff's RA were wrong in doing so. Plaintiff also argues that he was to continue receiving all medications so that he could stay physically and mentally fit for trial.

Though Plaintiff was a pretrial detainee at the times identified in his First and Second Amended Complaints, his deliberate indifference claim is examined under the Fourteenth Amendment rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979); *Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002) ("The protections for pre-trial detainees are 'at least as great as the Eighth Amendment protections available to a convicted prisoner' . . . ." (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983))). Yet the Seventh Circuit Court of Appeals has explained that courts still look to Eighth Amendment case law given that pretrial detainees' protections are "at least as broad as those that the Eighth Amendment affords to convicted prisoners." *Rice ex rel. Rice v. Correctional Medical Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) (citing *City of Revere*, 463 U.S. at 244).

Prison officials violate the Eighth Amendment proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The injury or need must be objectively serious, and the official must personally know of the risk and consciously disregard it. *See Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999); *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). An objectively serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (quoting *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997))).

Here, the undisputed evidence shows that at the time Defendant Shah reviewed Plaintiff's medications on March 18, 2009, he considered Plaintiff's recent complaints of only chest pain, Plaintiff's history of multiple psychiatric conditions, and a host of other considerations before discontinuing a number of the medications Plaintiff was on when he came from Alton. Plaintiff's argument that he had a list of medication when sent from Alton that he was to continue taking in order to stay fit for trial does not present a material factual dispute so as to defeat summary judgment. Whether Plaintiff was to stay on the medication he was prescribed while at Alton so that he would be fit for trial is a different question from the one before this Court: whether Defendants Shah, Alexander, and Bonnette were deliberately indifferent to Plaintiff's serious medical condition.

Plaintiff's additional argument that other doctors had prescribed him Enbrel for his RA also does not create a material factual dispute on the question of whether Defendant Shah was

7

deliberately indifferent to Plaintiff's serious medical condition by discontinuing that medication. The medical care Plaintiff received "may not have been entirely to his satisfaction, but the Constitution does not guarantee a prisoner's choice of a physician, a mode of treatment, or a place of treatment, nor does it (or could it) guarantee a particular outcome or level of comfort in the face of physical maladies." *Gerald v. Ind. Dep't of Corr.*, 2009 WL 1795178, at *3 (S.D. Ind. June 23, 2009) (citations omitted).

It is not the courts' practice to pass judgment upon whether the treatment decision made was the correct one. *See Estelle*, 429 U.S. at 107-08 (deciding that the lower appellate court erred in holding that the alleged insufficiency of medical treatment required reversal and remand); *Pinon v. Wisconsin*, 368 F. Supp. 608, 610 (E.D. Wis. 1973) (noting courts' general refusal to second-guess professional judgment of physicians who actually treat inmates)*; see also Maize v. Normand*, 2013 WL 1288046, at *3 (E.D. La. March 11, 2013) ("[M]atters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges."); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (noting that the courts are not to engage in every case in the process of second-guessing the adequacy of medical care that the state provides).

The Court cannot say that Defendant Shah's decision to discontinue Plaintiff's Enbrel and other medications was the wrong one such that the decision amounted to deliberate indifference. For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir.

8

1998)); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Plaintiff has not presented evidence to show that Defendant Shah's decision to discontinue his Enbrel was a substantial departure from accepted professional judgment. As Plaintiff himself conceded, he has not had any type of medical training or medical education. Further, the evidence reveals that Defendant Shah did not simply discontinue Plaintiff's Enbrel and other medications. Rather, upon Plaintiff complaining to him of feet, back, and hand pain on March 29, 2009, Defendant Shah prescribed Plaintiff Naprosyn, believing that it was the best way to treat Plaintiff's chronic arthritis. Significantly, Defendant Shah had considered Plaintiff's history of multiple psychiatric conditions and Plaintiff's current mental health concern, among other things, when he decided to discontinue certain medications that Plaintiff was on just days before on March 18, 2009. Again, the Court will not pass judgment on whether that treatment decision was the correct one. Defendant Shah is accordingly entitled to summary judgment.

Defendants Alexander and Bonnette are entitled to summary judgment as well. Plaintiff testified during his deposition that he believed that Defendant Bonnette did not relay his concerns to the treating doctors on all occasions. (Dfts' MSJ, Plf's Dep. pp. 40-41). Plaintiff further testified as to Defendant Alexander that he felt she was the one making the call as to whether he saw a doctor or not. (Dfts' MSJ, Plf's Dep. pp. 41-42). Plaintiff also testified that he personally saw both Defendant Alexander and Defendant Bonnette, asked them certain things, and they responded as if they were more or less treating him as if they were the physician and not just nurses. (Dfts' MSJ, Plf's Dep. pp. 43-44). However, Defendants have presented evidence which Plaintiff does not dispute that Defendant Alexander cannot make an official diagnosis of a patient and is not licensed to prescribe medications to patients. Also, Plaintiff stated during his deposition that his belief that Defendant Bonnette did not relay his concerns to

9

the physicians on all occasions was based upon speculation. He then conceded that he did not know one way or the other that Defendants Alexander and Bonnette may have been following the doctors' orders when they responded to him at different times. (Dfts' MSJ, Plf's Dep. pp. 44-45). While Plaintiff states that Defendant Alexander informed him that his Enbrel prescription would not be refilled because the cost of it was too expensive, such a statement by Alexander is not enough to defeat summary judgment. Given the undisputed evidence that she was not licensed to prescribe medications and only followed physicians' orders with respect to a patient, her comments to Plaintiff were gratuitous at most. Ultimately, Plaintiff's speculation and beliefs as to what role Defendants Alexander and Bonnette played in the decisions regarding his medical care are not enough where he must point to admissible evidence in the record to show that a genuine dispute exists in order to defeat Defendants' Motion for Summary Judgment.

Finally, given the Court's finding that there is no genuine issue of material fact to warrant a trial, the Court does not reach the issue of qualified immunity.

**IT IS THEREFORE ORDERED:**

1) **Defendants Alexander's, Bonnette's, and Shah's Motion for Summary Judgment is GRANTED [d/e 49]. The Clerk of the Court is directed to enter judgment in favor of all remaining Defendants and against Plaintiff. This case is terminated, with the parties to bear their own costs.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).**

3) **If Plaintiff wishes to proceed *in forma pauperis* on appeal, his motion for leave to appeal *in forma pauperis* must identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable**

**person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED this 15th day of August, 2013.

                                      s/ Joe B. McDade
                        _____
                                JOE BILLY McDADE
                          UNITED STATES DISTRICT JUDGE